## MARTHA B. HILL

*v.*

## HERMAN SHULTZ.

The owner of a store situated on a corner lot in a city, with a cellar thereunder divided into a front and rear cellar by a partition wall running parallel with the main street, rented the first story and rear cellar to the defendant as "a decocation and painting store." Access to the front cellar was gained by steps opening from the rear cellar on the side street, and thence through the rear cellar, and also by stone steps running from the front cellar floor up to the sidewalk of the main street, and coming out under one of the two large show windows of the store. At the time of the lease the outlet of these front cellar steps was covered by a platform. The defendant was informed, during the negotiations for his lease, that complainant intended to rent the front cellar, and

Hill *v.* Shultz.

the weight of evidence showed that, at least on one occasion, he had an oppor-
tunity of seeing the front cellar steps. There was no mention of the front cellar,
the steps, or the platform, in the lease.—*Held,* that the right to have the plat-
form retained in its horizontal position did not pass to the defendant under his
lease, expressly or impliedly, on the ground of reasonable necessity, or from
the manifest intention of the parties, although when the platform was removed
customers or other persons looking into that show window could not approach
it near enough to examine closely and conveniently the wares there displayed.

Bill for injunction.   On final hearing.

*Mr. John R. Emery,* for complainant.

*Mr. William B. Guild, Jr.,* for defendant.

Bird, V. C.

The complainant was the owner of a lot with a building
thereon, on the corner of Broad and Court streets, Newark.
She was remodeling the building, making one large store and
one small one on the first floor facing Broad street.   There were
rooms in the rear of these stores, and also in the second and third
stories, over the stores, for families to dwell in.   There was a
cellar under the larger store, which was partitioned by a brick
wall, in which was a doorway leading from one to the other.
The one farthest from Broad street was accessible from Court
street, and is known as "the small cellar."

Whilst these changes and repairs were in progress, the defend-
ant applied to the complainant to rent the larger store.   They
entered into an agreement, and a lease was executed and de-
livered.   After the store was completed the defendant entered
into the possession of it.   He had not been long in possession
before the complainant, by her workmen, commenced removing
some old boards from a platform in front of one of the show
windows in the larger store, which platform formed a covering
to a flight of stone steps leading to the said cellar.   The object
in removing this platform was to open the said cellar for use,
and to obtain access thereto by the steps there located.   Whilst
the complainant's workmen were so engaged the defendant inter-
posed, forbidding them to proceed, and offering resistance.   This
act on the part of the defendant moved the complainant to file

this bill, and to ask the court to restrain the defendant from further interference.

There is no question as to the right of the complainant to occupy and use the front cellar, but the defendant insists that the complainant cannot gain access thereto by means of the said steps under one of his front windows, because he claims it is his right to maintain that platform there so that passers-by may approach the show window and examine his goods.

Did that platform pass to the defendant under the lease which he accepted, either by express words or by necessary implication, is the point to be determined. The premises demised are described in the lease in these words :

" The store on the corner of Court and Broad streets, and known as No. 949 Broad street, together with the cellar under the rear half of the store, as at present partitioned off from the front cellar by a brick wall, subject to the use of the closet and a place for coal for the occupant of the smaller store adjoining said demised store on the north, with the appurtenances."

Plainly, the use of the platform in question was not expressly included. It is not named, nor in any sense alluded to so as to be distinguished. Nothing whatever is named but the store and rear cellar.

Did the platform pass to the defendant with the store, by necessary implication? Rights or interests do pass to lessees by implication. *3 Washb. Real. Prop. 637; Taylor on Land. and Tenant § 161; Ogden* v. *Jennings, 62 N. Y. 526; Doyle* v. *Lord, 64 N. Y. 432; Voorhees* v. *Burchard, 55 N. Y. 98; French* v. *Carhart, 1 N. Y. 96.*.

But where the express words of the grant are not sufficient, the implication which supplies those words flows either from a *reasonable necessity*, or, considering all the circumstances, from the *manifest intention* of the parties. To this extent, I think the foregoing authorities are harmonious. First, then, is the use of this platform necessary to the reasonable enjoyment of the store ? The store was to be used for a " decoration and painting store " and " for no other purpose."

Since the parties did not adjudge it important enough to con-

Hill v. Shultz.

tract respecting the use of this platform in plain terms, is the necessity so strong as to make the demands of the defendant appear reasonable? The fact that the defendant has the benefit of two windows in front, one on each side of the entrance, is deemed important, because customers can, if they desire, approach near to one, in case the platform is removed from under the other. This insistment on the part of the complainant, contains an admission which strengthens the claim of the defendant, on the point of necessity, which is that the very existence of these large show windows, is proof of the necessity. It may well be asked, Why were they constructed if the exigencies of the trade did not require them? There is force in this, but I am not satisfied that it should control. The windows are "show windows." The wares manufactured by the tenant are to be exhibited there, are to be placed there for show, to invite or attract customers. This can be done with or without the platform in front. It is true, goods cannot be so carefully examined at the distance of five or six feet as when within reach, but an examination through a plate glass must be very unsatisfactory at least. And I think it may fairly be presumed, from the testimony of Mr. Shultz, that the exhibitions in show windows are intended to induce passers to enter the store to examine. I think it may also be presumed that sales are never made through show windows; buyers do not part with their money without a closer examination than is possible at such a disadvantage. In my judgment there is no reasonable necessity existing in behalf of the defendant.

Since the instrument is silent on the subject, and no reasonable necessity is discovered, was it, nevertheless, the intention of the contracting parties that the platform should remain? The cases referred to, as well as many others, show that the circumstances, actions and conversations of the parties, at the time, may all be taken into account in determining what obligation the one is under to the other. Immediately prior to the execution of the lease, the parties thereto and the attorney of the complainant were on the premises, examining them with a view to the contract. They went into the rear cellar and made such observations as they could, considering the light, of the

condition of the front cellar. The defendant says that he stood in the doorway between the two cellars, and looked in, while the complainant and Mr. Harris, her attorney, went into the front cellar and walked around. From his statement, I think the complainant and Mr. Harris were in the front cellar several minutes. In the front of this cellar, and next to Broad street and under the platform above referred to, was a large area, the length and width of the platform, through which area the said stone steps led from the street to the cellar. As stated, this platform was raised above the sidewalk about five inches. On the side over the steps it was covered with boards, and on the other side with iron bars, between which were boards. On the side over the steps, the space between the platform and sidewalk and under the outside edge of the platform, was filled with a board standing upright and supporting the platform, and on the other side only narrow iron bars, from one to two inches apart, were used to support the platform, the spaces between these bars being open and admitting the light into the area and cellar. The entire space at the end of the platform next to Court street was open, there being no supports there. At the approach to the steps leading to this cellar, was a large stone, on a level with the sidewalk and about six inches from the platform. This stone has the ordinary appearance of the head or beginning of a flight of steps. Between this stone and the base of the platform was a board about the width of an ordinary step. Some light was admitted into the area through the grating under the platform, on the one side of the entrance, but to what extent this light made objects in the area and cellar visible, is not entirely clear, although the preponderance of testimony is that the steps alluded to were easily seen. This area was divided from the front cellar by large glass windows. The parties talked about the front cellar, and it was understood that the complainant intended to rent it. The defendant says that the complainant told him that the part of the old platform which was over the cellarway, and was made of boards, was to be replaced by a new one. There were only two ways of access to the front cellar—one by the flight of steps under the platform and one from Court street,

Hill v. Shultz.

through the rear cellar—unless a new way should be opened through the wall on Court street. Two witnesses swear that the said steps under the platform and also under one of the front windows, were alluded to and talked about by the parties. The defendant denies this. Mr. Harris wrote a letter to the carpenter, urging him to finish the new platform, because the defendant was impatient or anxious about it.

I think these are the principal circumstances and acts and words of the parties; can it reasonably be implied from them that the parties contemplated leasing that platform to the defendant for the use of himself and his customers or passers-by? It must have been the intention, not of one only, but of both, in order to bind.

It is important to notice that the defendant was informed that the cellar was to be rented; that he was in the doorway between the two cellars, looking, for several minutes, into the front cellar, learning, or ought to have learned, about the way of access to the front cellar, which the defendant leased, and the one in dispute. While the defendant stood in the doorway, between the two cellars, if he did not see the front cellarway, knowing, as he then did, that the front cellar was to be rented, it quite baffles credulity that he made no inquiry as to the means of access to it. Since he then must have expected to take the absolute control of the rear cellar (except a place therein for a coal-bin and the use of a closet), which would prove an effectual bar to any approach to the front cellar through the former, in my judgment, under such circumstances, the law would impose on the defendant the duty of inquiring as to the way of access to be employed, rather than compel the complainant to abandon the use of her cellar, or to open a new way on Court street, which would be quite impracticable, neither of which alternatives was intended by the parties. But I think the weight of the testimony justifies me in concluding that the defendant did see these steps. If he did see them, then he not only did not intend to lease the use of the platform for himself and his customers and passers-by, but he must have felt morally certain that the complainant intended to remove that platform to gain access to the cellar in case she

rented the small store, as she had informed him she expected to let the two together. As to the complainant's intention there can be no doubt. Taking her own acts and words as given by herself and Mr. Harris, I conclude, beyond a doubt, that she intended to open this cellarway; and, allowing the statement of the defendant to be true respecting the reproaches of the complainant to Mr. Harris when the defendant first complained of opening the cellarway, there is strong corroborative proof that she did not intend to lease the platform to the defendant. It is true this is after the contract, but it is a part of the conversation, and so a part of the *res gestæ*.

In the argument emphasis was laid upon the allegation of the defendant that Miss Hill, the complainant, said she would build a new platform, or that there was to be a new platform, and that either she or Mr. Harris said that the platform was to be extended all along the store. The defendant qualified the statement as to the "new platform" by saying that Miss Hill referred to the slats, and said "I will not say exactly a new platform, but she expected everything to be fixed nice to make it pleasant for me." And this, together with the alleged call upon the carpenter to complete the platform or to extend it, I think is quite consistent with the complainant's intention to open the cellarway if opportunity required, because she had the carpenter under a contract to do this as part of the whole job. The contract with the carpenter had been made long before the defendant and complainant saw each other with reference to the store; indeed, before they came together at all, the work of repairing and remodeling was well advanced towards completion. Certainly, then, having contracted for the work to be done, there was nothing inconsistent in her saying that she expected it to be done, nor in calling on the carpenter to finish his contract. The new platform could remain until the renting of the cellar should make an opening for the cellar necessary.

I conclude, therefore, that there is no reasonable ground for a decree to the effect that the parties intended to maintain a platform at the place designated, whether that front cellar was rented or not.

Hill *v*. Shultz.

The counsel of the defendant insisted that the conduct of the complainant was misleading and fraudulent. I do not discover a single act or expression that would warrant me in so advising. I think the testimony cannot be fairly read without every such notion being dispelled.

I will advise that an injunction do issue according to the prayer of the bill of complainant. The complainant is entitled to her costs.