BURNS & SCHAFFER AMUSEMENT COMPANY, A CORPO-
RATION, RESPONDENT, v. J. CLARK CONOVER, AP-
PELLANT.

Argued May 26, 1933—Decided September 27, 1933.

For the plaintiff, *Hannoch & Lasser* (*Herbert J. Hannoch*
and *Morris Weinstein,* of counsel).

For the defendant, *Quinn, Parsons & Doremus* (*John J.
Quinn* and *Theodore D. Parsons,* of counsel).

The opinion of the court was delivered by

CASE, J. These are cross-appeals by plaintiff and defend-
ant, tenant and landlord respectively, from a judgment in
the amount of $11,583.18 and costs awarded the plaintiff
against the defendant at a trial in the Monmouth Circuit.

In 1920 the defendant, Conover, as landlord, entered into
a lease with the plaintiff, as tenant, for a theatre property in
the borough of Red Bank at a rental of $10,000 a year for

a term of ten years. By the terms of the lease the tenant agreed to keep the interior of the premises in good and proper repair, not to make any alterations without the written approval and consent of the landlord and that it would "use the premises demised herein only for the moving picture or theatre business during the duration of this lease." There were also these clauses:

"The party of the first part in consideration of the rental and the guarantee paid to him at the execution of these presents, the receipt of which is hereby acknowledged, further covenants and agrees, that during the period of said ten years he will not engage either directly or indirectly for himself, or any other person, firm or corporation, in the moving picture business in the borough of Red Bank aforesaid, or in any other entertainment or theatrical business, and hereby expressly conveys to the party of the second part all of the good will of the Strand Theatre, and that he will not during the said period either directly or indirectly erect any building or structure to be used for any such purpose or finance erection thereof. * * * The party of the second part agrees to pay, and does hereby pay, at the making of these presents, the sum of twenty thousand dollars, the receipt of which is hereby acknowledged, in consideration of the good will of the party of the first part and as a guarantee for the prompt payment of said rent. In case the party of the second part exercises the option to purchase the said premises, said sum of twenty thousand dollars shall be applied upon the purchase price. If the rent is not paid as herein agreed, within thirty days from the date upon which it shall fall due, the party of the first part reserves unto himself the right to declare the within lease null and void, the guarantee forfeited, and to enter the said premises and remove all persons therefrom."

There was no provision in the agreement for the application of the $20,000 payment to the final rental requirements or for the return of the money, on the completion of the term, to the tenant. The lease contained an option of purchase at a fixed price. By reason of transfer of stock ownership the tenant company came into new control, was affiliated with

another theatre and defaulted in the payment of rent under the present lease; whereupon on December 6th, 1926, it was dispossessed. It thereupon brought this action to recover the $20,000, with interest.

The landlord answered denying liability and also counter-claimed, setting up five counts. The first count of the counter-claim was for $2,500, rent due at the time of the dispossession. The second was for expenditures incurred by the landlord in restoring the premises because of tenant's violation of its obligation to keep the theatre clean and sanitary and the interior in good repair. The third was for violation of the alleged obligation upon the tenant to use the premises during the duration of the lease for a moving picture or theatre business. The fourth was for the conversion of certain articles of personal property. The fifth was for the cost of restoration because of alterations made in the building by the tenant without the written consent of the landlord.

The trial court, considering that under the terms of the lease agreement the obligation upon the tenant to pay rent and the payment of $20,000 to secure the rent was the consideration for the conveyance by the landlord of his good will and for the restraint against his engaging in the moving picture, entertainment or theatre business, concluded that the $20,000 was paid exclusively as a guarantee for the prompt payment of rent during the term of the lease and therefore ruled that the tenant was entitled to recover that amount less $2,500 (the subject-matter of the first count of the counter-claim) admittedly due for rent. The court's ruling on this point was specifically that the tenant should recover the sum of $17,500 and interest from the date of dispossession on so much of that sum as should remain in excess of such amount, if any, as the jury might find was due to the landlord on his counter-claim other than the rent item already allowed. The jury found that the landlord was entitled to $8,951.54 on the remaining items of his counter-claim, that the subtraction of that sum from $17,500 left $8,548.46 due the tenant, and that the interest on the bal-

ance amounted to $3,034.72, making the total of $11,583.18 as the jury verdict for the tenant.

Tenant, on the appeal, presents that it was entitled to interest on the entire $17,500 as a liquidated debt and not merely on the difference between that sum and the award to the defendant, and that the award to the defendant included $500 for the removal of a temporary stage set up by the tenant whereas, as the tenant alleges, the landlord retained the stage and improved it for continued use. In view of our conclusion presently announced the method of calculating interest becomes academic. We consider that the controversy regarding the stage turned upon facts that were properly left to the jury.

The first point argued on the brief for the landlord is to the effect that the tenant cannot recover for the reason that it had breached the terms of an agreement under which the money paid by it, recovery of which is sought, was an entire consideration, the landlord having already performed partially and remaining willing to perform completely. By the terms of the lease agreement the payment was "in consideration of the good will of the party of the first part and as a·guarantee for the prompt payment of said rent." This language imputes two functions, namely, a present payment for existing good will and a guarantee for the payment of future rent. If the construction by the trial judge is right, then, whether there was or was not a default by the tenant, the landlord could under no circumstances have any part of this money for his good will. That seems to us to be in contradiction of the contractual provision incorporated into the lease as an integral part of the clause that recites the payment of the money and the purposes for which it was paid, namely, that the payment was "in consideration of the good will of the party of the first part and as a guarantee for the prompt payment of said rent." We recognize, and feel impelled to give effect to, the aspect of the payment as consideration for good will. The defendant Conover not only was a landlord. He had been an operator in the moving

picture business over a period of years, first for others and then for himself. He had built up a good will both in himself as distinguished from a location and in the particular theatre, known as the "Strand," under lease. He not only rented a building to the tenant but he sold to it the good will of the "Strand Theatre," and not only the good will of that theatre, but his own good will. We are not unmindful of the wording in the first of the quoted paragraphs that the landlord engaged to refrain from certain activities "in consideration of the rental and the guarantee paid to him at the execution of these presents." But the word "guarantee" as here used must be understood to embrace the money itself—that which was "paid to him." It does not relate merely to a contractual undertaking. Therefore, the payment served a double purpose. It was not apportioned. It was entire. The tenant clearly defaulted. It had then occupied the premises more than six years. It had several years of the lease yet to run, involving rental sums far in excess of $20,000. Had the landlord remained quiescent with an empty theatre and applied the moneys in hand, month by month, to the payment of rent under the lease, he would presently have consumed the fund, if it be considered a fund, with many months' rental yet to accrue and not one penny for his good will; though meanwhile the good will would have become meaningless and valueless. We do not so read the lease. If the money remained the property of the tenant subject only to reduction by the landlord on, and in payment of, defaults in rent, it is difficult to understand the reason for the provision that it should be applied to the purchase price if the tenant exercised its option to purchase the property; one does not need contractual authority for the beneficial use of his own funds. Subject to like comment is the absence of direction that the money or any unapplied portions thereof should be credited to the final rent accruals; and, too, the omission of direction for the return to the tenant at the end of the term of the balance remaining. No increment by way of earned interest is saved to the ten-

ant. Because of one or more of the incidents mentioned above, the case is distinguishable from *Hecklau* v. *Hauser*, 71 *N. J. L.* 478, and the other cases cited in tenant's brief.

The payment was a consideration for the conveyance of the good will. It was also a guarantee for the prompt payment of rent. But there was no division or allocation of fixed amounts to these separate purposes, and there was no obligation upon the landlord to permit the tenant to remain in possession without paying rent. In the language by which the landlord reserved the right to terminate the lease for non-payment of rent and to declare "the guarantee forfeited" we read an intent to end all further right on the part of the tenant to have the moneys applied to rent obligations or the purchase price or to any other than its remaining purpose as consideration for good will. We understand that the word "forfeiture" is here used with this limited and special meaning, but we perceive therein the intent that the money should be applied in acquittance of such arrearages in rent as should then exist.

This interpretation of the instrument co-ordinates its provisions and gives significance to all of its parts. The result is this: The pleadings developed that the tenant's suit was actually for $17,500—the $20,000 payment less the $2,500 rent; and it was for $17,500 plus interest that the tenant asked for, and received, a directed verdict on that aspect of the case.

For the reasons given we think that the tenant was not entitled to receive $17,500 or any part thereof. The landlord's first point is well taken.

The second point presented on the landlord's brief needs no additional comment.

It is next argued that the court erred in refusing to admit in evidence, as proof of the intention of the parties regarding the $20,000, a preliminary option in writing, in fulfillment of which the lease agreement was written and executed. We find in the testimony no such clear definition of the position of this writing as a factor in the case and no such precise offer of the paper as distinguished from the effort to

introduce oral testimony with respect to its contents as to justify our consideration of the point.

Finally, it is said that the court erred in striking the third count of the counter-claim. The court did not err. The covenant sued upon is as follows:

"The party of the second part further covenants and agrees that it will use the premises demised herein only for the moving picture or theatre business during the duration of this lease."

The covenant was prohibitive against putting the premises to uses other than for moving picture or theatre purposes. It did not, however, require operation for those authorized uses. Moreover, the damages said to have followed from the alleged breach seem to be damages to the good will sold by the landlord to the tenant.

There will be an affirmance in so far as the tenant's appeal is concerned. For the reasons given above there will be a reversal upon the landlord's appeal to the end that a *venire de novo* issue.

*For affirmance of tenant's appeal*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, VAN BUSKIRK, KAYS, HETFIELD, DEAR, DILL, JJ. 14.

*For reversal*—None.

*For reversal of landlord's appeal*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, VAN BUSKIRK, KAYS, HETFIELD, DEAR, DILL, JJ. 14.

*For affirmance*—None.