Evidenced by a written lease bearing the recent date of February 9th, 1948, the defendants demised unto the complainants for a term of four and one-half years from February 1st, 1948, the entire first floor and basement of their building known as No. 360 North Clinton Avenue in the City of Trenton, "together with the right in common with the occupants of the balance of said building to use rear yard in back of said building, with the appurtenances." It was understood and anticipated that the complainants would utilize the demised premises as a saloon for the sale at retail of intoxicating and other beverages.
In May, 1948, the complainants, confronted with the competitive allurements now employed by the proprietors of other cafes in the city, resolved likewise to install in the demised premises a television instrument for the attraction and entertainment of their patrons and prospective customers. In pursuance of that project, the complainants began the erection at an otherwise unserviceable location in the rear yard of a pole approximately 25 feet in height and securely implanted in a concrete base, to support the requisite antennae. The defendants forthwith demolished it.
The complainants are exceedingly eager to persevere in the installation of the equipment, but they implore this court to protect them against the threatened hostile devastations of the defendants.
There are casual and incidental rights and interests which sometimes pass to lessees by implication arising from reasonable *Page 365 
needs, conventional uses, or from other circumstances manifesting the probable intentions of the parties. Hill v. Shultz,40 N.J. Eq. 164.
No one, I conjecture, has as yet prepared a written lease or contract so copious and diffuse as to speak its entire piece. Normally the words of the instrument radiate by implication numerous unexpressed rights and privileges truly within the contemplations of the parties. In a written lease of a dwelling, one would ordinarily search in vain throughout its terms to discover any express and specific grant to the lessee of the privilege to install furnishings, or to cook, dine, and sleep in the premises.
And so, where the nature of the intended basic and principal use of the premises is made perceptible, the rights and privileges which habitually and customarily appertain to and accompany such a use are implied, unless clearly negated. It is, of course, the prevalence of the adaptation of the privilege to the character of the intended usage of the premises and the common, general, and current exercise of the privilege in like situations that warrant the implication that the enjoyment of the privilege was within the contemplations of the contracting parties.
To the trite expression that death and taxes are certain may also be added as of equal certainty the changes of the customs of life. Must a lessee now find in his lease the express permission to install a telephone?
Science has bequeathed to humanity the radio, the juke box, air conditioning, and the neon sign, all of which may more commonly and generally than elsewhere be found at modern cafes, restaurants, and places of recreation and entertainment. Was it not evident in February last that television sets would be similarly popular and prevalent in such resorts?
That the law should always be harmonious with the contemporaneous standards of knowledge and intelligence is a conviction I do not care to defy. Sound law is the dictate of reason. Lex est dictamen rationis. Any objection of the landlord that the use of the instrument would cause an unanticipated congregation of spectators in the demised premises is untenable. I therefore do not hesitate to state that the *Page 366 
maintenance by the complainants of a television instrument within the portion of the building so demised to them is a privilege impliedly conferred by the lease.
But the presence of the instrument and the enjoyment of the projected programs within the demised premises is not the core of the problem. An external receiving antenna is at present essential to the operation of the set. To erect and maintain in the rear yard the requisite standard to support the antenna would undoubtedly constitute an appropriation by the complainants of some part of the yard exclusive and not common in character. Such a private easement the complainants have not acquired.
In the present instance the rear yard appears to be the portion of the entire property over which the landlords have retained control for the use in common of all the occupants of the building and for the reasonable safety of which area for such use the landlords are responsible.
The order to show cause is discharged, and the application for preliminary restraint must be denied.