TOOLEY'S TRUCK STOP, INC., A CORPORATION OF NEW JERSEY, PLAINTIFF-APPELLANT, v. ANTONIOS CHRIS-ANTHOPOULS, JAMES CHRISTAKOS, NICHOLAS GER-ONDELIS AND SIP DINER, INC., DEFENDANTS-RE-SPONDENTS.

Argued November 3, 1969—Decided January 19, 1970.

*Mr. Aaron Z. Schomer* argued the cause for appellant (*Messrs. Gurtman and Schomer,* attorneys).

*Mr. Colin M. Dillon* argued the cause for respondents (*Messrs. Pollis, Williams, Pappas & Dillon,* attorneys).

The opinion of the court was delivered by

JACOBS, J. The Law Division held that the defendants were under no obligation to operate a diner on the premises they leased from the plaintiff's predecessor and that they

could continue as lessees for the full term of the lease so long as they paid the monthly rental. The plaintiff appealed to the Appellate Division which affirmed in an unreported *per curiam*. We thereafter granted the plaintiff's petition for certification. 54 *N. J.* 242 (1969).

Tooley's Truck Stop has been operated in Jersey City since the early forties. It is located on a large tract of land abutting Route 1, is open for business around the clock, and has suitable facilities for long truck haulers and other truck drivers who may obtain gasoline, oil, propane, ice, sleeping quarters, etc. Since the availability of food was obviously called for and there was no restaurant in the immediate area, the original owners of the Truck Stop, Messrs. Siegel and Frank, installed a diner on the property adjacent to their other facilities. They operated the diner for about a year and then sold it to Messrs. Brown & Eagle who leased the land on which the diner operation was located. Later Messrs. Brown & Eagle sold the diner to John Pakkisas and Gus Crealus who in turn leased the land and continued to operate the diner on an around the clock basis, as had their predecessors.

In 1959 the individual defendants became interested in purchasing and operating the diner. They knew that the Truck Stop and the diner were being operated on a twenty-four hour, seven day a week basis. They negotiated with Mr. Siegel for a long lease. The plaintiff sought to establish that, during the negotiations, there was a mutual understanding that the lessees would be affirmatively obligated to continue the operation of the diner on a twenty-four hour, seven day a week basis but the trial judge found that the plaintiff had not carried the burden of establishing such understanding. However, there was no real dispute that the individual defendants knew the nature and needs of the Truck Stop's business and the nature of the diner's previous operations. Thus it is clear from Mr. Christakos' testimony that he knew the diner was adjacent to the Truck Stop and that they were both operated on an around the clock basis. Mr. Chrisantho-

pouls testified that he, along with the other individual defendants, was present at the original meeting with Mr. Siegel; that he knew that the Truck Stop and the diner were open on an around the clock basis; that it was his intention to keep the diner open on a similar basis so long as the business warranted; and that in any event he intended to keep the diner open each day for some period of time.

In May 1959 Messrs. Siegel and Frank executed a twenty-year lease to the individual defendants for the premises on which the diner was located. The lease contained no specific provision with respect to the hours of operation. It did provide that the leased premises were "to be used and occupied only for the operation of a dining car and dispensing of food and soft drinks." It further provided that the landlords would not rent or permit the use of any other portion of their property "for any business selling and serving food and soft drinks in any form." A printed provision of the lease contained the customary clause that if the premises "shall become vacant" the landlords may reenter, relet and apply the rent received towards the lessees' rental obligation.

The individual defendants took possession of the diner, commenced operation on a twenty-four hour, seven day a week basis and continued such operation without interruption for several years. In the interim the Truck Stop was conveyed to the plaintiff corporation with Mr. Siegel and his son Edwin as the principal stockholders and the diner was conveyed to the defendant corporation with the defendant Christakos as its principal stockholder. Beginning in 1964 the diner's operations became sporadic. It was closed on some Saturdays and Sundays and during some nights but the situation did not become critical until January 1967. Mr. Siegel testified that at that time he found the diner closed, that he complained to Mr. Christakos, and that thereafter the diner was reopened. However, between January and June the diner was closed on various occasions for substantial periods of time. In June the plaintiff served notice on the

individual defendants that their lease was being terminated because they had failed to use and occupy the leased land for the operation of a dining car and for dispensing of food and soft drinks. Some months after the receipt of this notice, the defendants subleased the diner to Mr. Teddy Marose who reopened it in December. Mr. Marose testified that although he tried to make it operable the Board of Health directed him to close for a time during which certain corrections had to be made. At the time of the trial in the Law Division the diner was actually closed, purportedly for repairs for "a couple of weeks."

The plaintiff's complaint in the Law Division was filed in November 1967. It sought a declaratory judgment that the plaintiff had the right to terminate the lease because of the failure of the defendants to use and occupy the leased premises for the operation of a dining car and the dispensing of food and soft drinks. In their answer, the defendants admitted periodic closings and curtailment of hours but denied any legal obligation on their part to operate in any specified manner and denied any right in the plaintiff to terminate the lease. During the trial, the plaintiff's position was that the defendants were obligated to operate around the clock and that, in any event, if that were not so they were obligated to operate at reasonable times and in reasonable manner. The defendants' position was that they were under no obligation to operate the diner at all and that so long as they paid their rent, which was being duly tendered, they were entitled to retain their lease-hold interest in the plaintiff's land. The Law Division agreed with the defendants' position and entered judgment which determined that the "defendants are not required to operate and keep open for business the diner located on the leased premises other than as they deem desirable."

After the entry of the Law Division's judgment, dated June 19, 1968, the defendants boarded up the diner and admittedly it is not in operation. In August 1968 the plaintiff moved before the Law Division to supplement the record by

testimony that Mr. Christakos had participated in the boarding up and had told Edwin Siegel that he would "never open the diner again" and that he could "afford to pay the rent." The plaintiff's motion was denied. In the Appellate Division the plaintiff submitted photographs which evidenced the highly deteriorated condition of the diner and its immediate surroundings. In its certification petition in this Court, the plaintiff referred to a letter dated August 15, 1969 from counsel for the defendants, advising that his clients believed that a newer diner might be operated profitably at the Truck Stop location and that they were taking steps "to secure a newer and more modern diner." Apparently nothing further came of this. In its brief on appeal before this Court, the plaintiff included copies of the photographs which it had submitted to the Appellate Division, along with a copy of a letter dated May 15, 1969 from the Jersey City Superintendent of Buildings advising that the diner was becoming dilapidated and dangerous and would have to be repaired or demolished.

In its oral argument, the plaintiff asserted flatly that it desires that the defendants forthwith resume operation of the diner, if not on an around the clock basis, then at least during reasonable hours. In view of this and the entire record before us, it is assumed that the plaintiff in good faith contemplates the continued operation of its Truck Stop and considers that reasonable operation of the diner is an essential to that end. The defendants' oral argument was rested on their legal contention that, since the lease did not in express terms set forth that they would be obligated to operate during any specified time or hours, they were at liberty to operate at such time and hours as they chose or not at all and that their only obligation was to pay rent which they have at all times duly tendered. They relied on cases such as *McCormick v. Stephany,* 57 *N. J. Eq.* 257 (*Ch.* 1898), *modified,* 61 *N. J. Eq.* 208 (*Ch.* 1900), *Hoffman v. Seidman,* 101 *N. J. L.* 106 (*E. & A.* 1925), and *Burns & Schaffer Amusement Co. v. Conover,* 111 *N. J. L.* 257 (*E. & A.* 1933), but, as pointed

out in *Ingannamorte v. Kings Super Markets, Inc.,* 55 *N. J.* 223 (1970), those cases are readily distinguishable and are not controlling here. They involved situations where the landlord's interest was fully satisfied by the payment of rent; they did not involve situations where, as here, there was economic interdependence between the landlords' operation and that of the lesses and where the landlords' interest in the continued active operation by the lessees exceeded by far the mere payment of rent.

The very terms of the lease, when considered as they must be in the light of the acknowledged surrounding circumstances (*Casriel v. King,* 2 *N. J.* 45, 50–51 (1949); *Garden State Plaza Corp. v. S. S. Kresge Co.,* 78 *N. J. Super.* 485, 496–97 (*App. Div.*), *certif. denied,* 40 *N. J.* 226 (1963)), clearly disclosed the economic interdependence of the respective operations. The lessors were operating a Truck Stop which needed a food service and the lease was obviously entered into by all of the parties with that specifically in mind. The lease expressly provided that the premises were to be used and occupied only for the operation of a diner and the dispensation of food and soft drinks and that the landlords would not permit the competitive use of any other portion of their property for the sale of food and soft drinks. It is true, as the defendants stress, that it did not expressly spell out anything about mandated hours of operation. *Cf. Renee Cleaners, Inc v. Good Deal, etc, N. J.,* 89 *N. J. Super.* 186, 194–95 (*App. Div.* 1965); *Dover Shopping Center, Inc. v. Cushman's Sons, Inc.,* 63 *N. J. Super.* 384, 387–88 (*App. Div.* 1960). But, clearly, the omission of express terms is not dispositive (*Bellomo v. Bisanzio,* 142 *N. J. Eq.* 363, 365 (*Ch.* 1948)) and does not preclude fair implications reasonably designed to carry out the goals and intents of the parties. *See Ingannamorte v. Kings Super Markets, Inc., supra; Silverstein v. Keane,* 19 *N. J.* 1, 12 (1955); 3 *Corbin, Contracts* § 561 (1960).

Pointing to all of the acknowledged circumstances, including the undisputed mode of operation immediately before and

after the execution of the lease, the plaintiff contends that a twenty-four hour, seven day a week operating requirement may properly be implied. This step would be too far reaching particularly since the Law Division found that the plaintiff, though it was broadly permitted to introduce oral testimony, had not carried the burden of establishing any mutual understanding to that effect. But the Law Division also found that the diner operation "was an imperative need of Tooley's Truck Stop business" and that when the defendants negotiated for their lease they were aware of the surrounding circumstances and the diner's operation on an around the clock basis. Their own testimony was that they intended to operate the diner for at least some hours daily and for as many as proved economically feasible. Surely it was not within the contemplation of any of the parties that the lessees would have the authority to cease operations entirely and still bind the lessors for the many remaining years of the lease through the continued payment of rent without more. The lease explicitly provided against the sale of any food or soft drinks elsewhere on the plaintiff's Truck Stop property; in view of this it is inconceivable that anyone concerned with the transaction entertained the thought that the lessees would have the right to follow the capricious course of action which they are now pursuing and are seeking to defend on legalistic grounds.

In the light of all of the above, we readily accept the plaintiff's alternate contention that an obligation to operate the diner during reasonable hours may properly be implied. *See Ingannamorte v. Kings Super Markets, Inc., supra.* The only thing the plaintiff seeks, apart from the payment of rent due to date which the defendants acknowledge, is to have the lessees vacate the premises completely with cancellation of the lease or to have them resume operation of the diner in reasonable fashion. As set forth in our companion decision in *Ingannamorte, supra,* the terms of the lease and every consideration of fairness entitle it to that measure of relief; the lessees still have the aforementioned option which they may

exercise within 30 days from the filing of this opinion, and they are in no just position to claim more.

Reversed.

*For reversal*—Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—6.

*For affirmance*—None.