647 P.2d 643

WALGREEN ARIZONA DRUG CO., an Arizona corporation, Plaintiff-Appellee,

Fed-Mart Corporation, a corporation, and Fed-Mart Stores, Inc., a California corporation, Third Party Defendants-Appellees,

v.

PLAZA CENTER CORPORATION, an Arizona corporation, and John L. Holmes, individually and as general partners of Tower Plaza Investments Limited, a Limited Partnership, Defendants-Third Party Plaintiffs-Appellants.

Nos. 1 CA–CIV 5129, 1 CA–CIV 5239.

Court of Appeals of Arizona, Division 1, Department B.

May 18, 1982.

Streich, Lang, Weeks & Cardon, P.A. by William S. Hawgood II, Frank M. Placenti, Phoenix, for plaintiff-appellee, third party-defendants-appellees.

Harrison, Myers, Singer & Lerch, P.C., by Thomas F. Harper, Phoenix, and Michael L. Robins, Los Angeles, Cal., for defendants-third party plaintiffs-appellants.

## OPINION

JACOBSON, Presiding Judge.

This appeal involves a determination of whether a covenant of continuous operation may be implied in a shopping center lease setting and whether a sublease of the premises by a tenant was in reality an assignment prohibited by the terms of the lease.

This action for declaratory judgment was instituted by appellee Walgreen Arizona Drug Company (Walgreen) as a tenant under a lease with appellant Plaza Center Corporation and Tower Plaza Investment, Limited, a limited partnership (collectively referred to as Tower Plaza), seeking a declaration that Tower Plaza had improperly attempted to terminate Walgreen's lease of certain premises located at the Tower Plaza Regional Shopping Center. Tower Plaza counterclaimed and filed a third party complaint against Fed-Mart Corporation and Fed-Mart Stores (collectively Fed-Mart) seeking damages and a declaration that the lease between Walgreen and Tower Plaza was terminated, based either upon: (1) a breach of an implied covenant of continuous operation, or (2) a breach of a non-assignment clause in the lease.

Fed-Mart answered and filed a counter-claim seeking declaratory relief and damages. Subsequently, both Walgreen and Fed-Mart filed motions for partial summary judgment going solely to the issue of whether the lease between Walgreen and Tower Plaza was terminated because of breaches by Walgreen.

The trial court granted partial summary judgment in favor of Walgreen and Fed-Mart, in essence holding that whether or not the Walgreen/Tower Plaza lease contained an implied covenant of continuous operation, because of other provisions in the lease any such implied covenant must accommodate reasonable business interruptions associated with tenant changes which was not breached by Walgreen. Further, the trial court found, as a matter of law, that the arrangement between Walgreen and Fed-Mart constituted a sublease, and not an assignment and therefore was permitted under the terms of the lease. Following the denial of post-judgment motions, Tower Plaza has appealed.

The facts material to disposition of this appeal and the contention of the parties, are that on June 5, 1964, A. T. LaPrade and his wife, lessors, and Globe Discount City of Arizona, a corporation, lessee, entered into a lease, for a portion of a planned and projected shopping center. The lease was for a period of 20 years with 2 optional renewals for 10 years each. A fixed base rental of $9,932.61 per month was provided. The lease provided no express provision as to continuous occupancy, but did provide that the premises were to be used as a "retail store." The leased building was in fact built to Globe City's specifications. Pertinent to the issues here, the lease provided:

Tenant may at any time and from time to time sublet the leased premises in whole or in part for any lawful purpose but shall not thereby be released from liability under this lease. Further, Tenant's interest under this lease may, at any time and from time to time, be assigned and re-assigned, provided that any such assignment or re-assignment be only to a corporation which is the parent of, subsidiary to or affiliated with Tenant ....

Globe Discount City is the subsidiary of Walgreen Company, which is the parent corporation for Walgreen Arizona Drug Company. In 1965, Globe City sublet the premises to Walgreen and eventually assigned all its leasehold to Walgreen in 1970.

In December, 1964, the Tower Plaza Shopping Center was purchased by Tower Plaza which succeeded to all the lessor's interest.

In late 1977, Walgreen determined that it would suspend its retail operations at the shopping center, and on December 31, 1977, Walgreen closed the Globe store, removed its signs and boarded up the windows. Walgreen continued to pay all rents and fulfilled all obligations under the written terms of the lease. Walgreen also entered into negotiations with Fed-Mart to transfer its lessee's interest to Fed-Mart.

On February 14, 1978, Tower Plaza entered and took possession of the premises after sending notice that Walgreen had breached an implied covenant of "Continuous Occupancy and Business Operation." Thereafter, pursuant to an agreement between Walgreen and Tower Plaza, Walgreen was restored to possession pending this litigation.

In the meantime, negotiations between Walgreen and Fed-Mart continued. At first, these negotiations contemplated an assignment of Walgreen's leasehold interest to Fed-Mart. However, after checking the master lease, and upon advice of counsel, Fed-Mart and Walgreen in September, 1978, entered into a "sublease," the pertinent provisions of which provided that the leased premises shall revert to Walgreen one day prior to the expiration of Walgreen's lease with Tower Plaza and that reversion should also occur in the event of any default by Fed-Mart.

Following the execution of this sublease, Tower Plaza again notified Walgreen that it had breached the lease, as the Walgreen/Fed-Mart transaction constituted a prohibited "assignment."

Tower Plaza presented evidence in the trial court that Globe Discount City was the "major" tenant in its shopping center plan; that as a major tenant, it would act as a "magnet" to draw traffic to the shopping center and thus customers to the other "satellite" businesses in the center, all of which, except Globe City, paid rentals based upon a percentage of sales to Tower Plaza; that as the "draw" for the shopping center, Tower Plaza entered into a fixed monthly rental lease agreement with Globe City which was insufficient to amortize the debt incurred to construct the Globe City store and, in fact, created a negative cash flow of over $30,000.00 per year; and that Tower Plaza would only have made such a rental concession based upon an implied promise by Globe City to maintain continuous operation so as to draw customers to the center who would profitably support the other "satellite" businesses at the center.

## IMPLIED COVENANT OF CONTINUOUS OPERATION

It is clear that the Tower Plaza/Walgreen lease contains no express provision requiring the tenant to maintain a continuous operation. The only express provision in the lease dealing with occupancy is that the leased premises shall be used as a "retail store."

However, Tower Plaza contends that such a covenant should be implied where the following circumstances exist:

1. Where the lease is for a major tenant and forms a part of an integrated and interdependent shopping center, and

2. Where the base fixed rent received is "inadequate or insubstantial."

While the trial court held that if an implied covenant existed in this case, it was subject to reasonable business interruption, Walgreen does not seek to justify the trial court's ruling on this basis. Rather, Walgreen argues that under the terms of this particular lease, no covenant for continuous operation can be implied.

■ We start from two basic premises involving implied covenants, especially implied covenants concerning occupancy. The first premise is that implied covenants are not favored. *Smith v. Phlegar*, 73 Ariz. 11, 236 P.2d 749 (1951). This *persona non grata* status is based primarily on the presumption that when parties have entered into written agreements which embody the obligations of each, they have expressed all of the conditions by which they intend to be bound and courts should be reluctant to enlarge, by implication, on those conditions which affect important matters. *Cousins Investment Co. v. Hastings Clothing Co.*, 45 Cal.App.2d 141, 113 P.2d 878 (1941).

■ The second premise is that where a lease is silent as to the use to which the leased premises are to be made or occupied, the lessee has the full right to use and occupy the demised premises for any lawful purpose not injurious to the reversion. *M. Karam & Sons Mercantile Co. v. Serrano*, 51 Ariz. 397, 77 P.2d 447 (1938).

■ This does not mean that covenants to written agreements may never be implied. However, because of the reluctance of courts to tamper with parties' written contracts, certain conditions have been imposed before a court will imply a covenant. These conditions have been summarized as:

(1) The implication must arise from the language used ...; (2) it must appear from the language used that it was so clearly within the contemplation of the parties that they deemed it unnecessary to express it; (3) implied covenants can only be justified on the grounds of legal necessity; (4) a promise can be implied only where it can be rightfully assumed that it would have been made if attention had been called to it; (5) there can be no implied covenant where the subject is completely covered by the contract.

*Lippman v. Sears Roebuck & Co.*, 44 Cal.2d 136, 280 P.2d 775, 779 (1955); see also, *Smith v. Phlegar, supra*.

However, as has been stated:

It is not enough to say that it is necessary to make the contract fair, that it ought to have contained a stipulation which is not found in it, or that without such covenant it would be improvident, unwise, or operate unjustly.

*Smith v. Phlegar,* 73 Ariz. at 18, 236 P.2d at 754.

Tower Plaza, in an attempt to satisfy the condition that "the implication must arise from the language used" points to four clauses of the lease: (1) the clause fixing the monthly rental at $9,932.61; (2) the clause requiring the lessor to provide lessee with a parking lot which would accommodate 3300 automobiles; (3) the clause providing that a physical relationship will appear between the Globe store and the balance of the shopping center; and (4) the clause stating that free access will be provided between the Globe store and the rest of the shopping center. In our opinion, none of these clauses satisfies this condition.

■ The lease simply provides that the lessee shall pay a flat, fixed monthly rental. Tower Plaza argues that it should be allowed to show that this fixed rental was inadequate and that the reason the lessor was willing to accept inadequate rent was to use the Globe store as a magnet to draw customers to the center who would also patronize the satellite business, which had percentage of sales rental leases, and thus make the center profitable. From this premise, the Tower Plaza concludes that the inadequate rental implies a covenant of continuous operation.

In our opinion, this argument puts the cart before the horse. A fixed monthly rental implies nothing. It is only when the rental arrangement gives rise to an implication of occupancy, in and of itself, that extrinsic evidence becomes admissible to show the inadequacy of the base rent, which in turn would imply a covenant of continuous operation. This is the rationale of all the cases cited by Tower Plaza on this issue (with two exceptions which are noted later in this opinion). In all these cases, the rental was based either upon a straight percentage of sales, or upon a minimum fixed rental and additional rental based upon a percentage of sales. In such cases, the rule is aptly stated in *Dover Shopping Center, Inc. v. Cushman's Sons, Inc.,* 63 N.J.Super. 384, 164 A.2d 785, 791 (1960):

Courts have recognized the uniqueness of a percentage lease and have generally implied therefrom an obligation on the part of the lessee to occupy the property and to use reasonable diligence in operating the business in a productive manner.

■ The "uniqueness" of the percentage lease is the recognition by the courts that in order for the landlord to receive compensation for the use of his property, the lessee must produce sales and therefore the lessee, on his part, reasonably implies that he will use good faith in insuring the continuation of these sales—a covenant of continuous operation. *Lippman v. Sears Roebuck & Co., supra.* However, it is clear that even in percentage leases, that if the minimum fixed monthly rental is adequate to compensate the lessor for the use of the premises, the fact that additional compensation may be forthcoming by way of percentage of sales does not give rise to an implied covenant of continuous occupancy. *Cousins Investment Co. v. Hastings Clothing Co., supra; Masciotra v. Harlow,* 105 Cal.App.2d 376, 233 P.2d 586 (1951).

Thus, it is clear that the implied covenant of continuous occupancy does not rest upon the inadequacy of the fixed base rent, but upon the rent that is to be produced by a percentage of sales. The adequacy or inadequacy of the fixed rental only becomes a factor in determining whether a covenant should be implied when the rent is determined on a percentage basis.

■ We therefore hold that a fixed base rental, in absence of a rental based upon sales, in and of itself, gives rise to no implication that the lessee shall continue to operate a business upon the premises.

■ The other clauses of the lease pointed to by Tower Plaza as implying a continuous operation covenant, deal with parking spaces, the appearance of a shopping center and free access by customers of the shopping center to the lessee's business. In essence, these clauses show that the Globe store was a part of a shopping center housing other business, a fact not disputed by Walgreen. The only cases cited by Tower Plaza (and no others have been found by the court) which squarely hold that an im-

plied covenant of continuous operation arises solely because the business is a part of an "integrated" shopping center are two cases from the New Jersey Supreme Court, both decided the same day and both authored by the same judge: *Ingannamorte v. Kings Super Markets, Inc.*, 55 N.J. 223, 260 A.2d 841 (1970) and *Tooley's Truck Stop, Inc. v. Christanthopouls*, 55 N.J. 231, 260 A.2d 845 (1970). While both of these cases could be distinguished based upon the "use" provision in each lease, the rationale of each case hinges upon the determination that:

> [W]here ... there was economic interdependence between the landlords' operation and that of the lessees and where the landlords' interest in the continued active operation by the lessees exceeded by far the mere payment of rent

a covenant of continuous operation can be implied. *Tooley's Truck Stop, Inc. v. Chrisanthopouls*, 260 A.2d at 848.

New Jersey seems to stand alone for this proposition. Moreover, it overlooks the well-established rule that a statement as to the use of the leased premises does not imply a covenant that the lessee may not cease to use the premises for any purpose. *See Tenant's Duty to Operate*, Annot. 46 A.L.R. 1134 (1927). Also, the fact that a lessor may have a myriad of reasons why he desires the continued active operation by the lessee, unrelated to rent, should not relieve the lessor from the responsibility, if this is important, of specifically expressing his desires on the subject, so that the lessee may properly consider such an arrangement in determining the advisability of entering into the lease. In short, we find the New Jersey court's "integrated" reasoning to be unpersuasive.

Having considered all of the arguments advanced by Tower Plaza, we find nothing in this lease from which we could imply a covenant of continuous operation. Therefore, the trial court did not err in failing to find a breach by Walgreen of such a covenant.

## SUBLEASE VERSUS ASSIGNMENT

Tower Plaza next argues that the sublease between Walgreen and Fed-Mart is in essence an assignment. This argument is based upon the contention that the arrangement between Walgreen and Fed-Mart is a "sham" and that the common law distinction between a sublease and an assignment—whether the subleasor retains any reversionary interest—is based upon "archaic formalism." Tower Plaza advocates what it says to be the "modern" rule, that is, that the form of the transaction should be disregarded and the intention of the parties should control how this transaction is classified.

The problem with Tower Plaza's argument is that Arizona has adopted the "archaic formulism" of the common law. The rule is well stated in *Shreck v. Coates*, 59 Ariz. 269, 276, 126 P.2d 308, 311–12 (1942) quoting from 32 Am.Jur. 290, § 314:

> "The distinction between an assignment of a lease and the subletting of the premises lies in the quantity of interest that passes by the transfer, and not upon the extent of the premises involved. Primarily, the test is whether, by the transaction, the lessee conveys his entire term or retains a reversionary interest, however small. As a general proposition, if by the transaction the lessee conveys the entire term and thereby parts with all reversionary interest in the property, the transaction is construed to be an assignment; but if there remains a reversionary interest in the estate conveyed, it is a sublease."

While we question Tower Plaza's basic assumption that the common law rule is outmoded, it is clear that as between Walgreen and Fed-Mart, the transaction was structured so as to comply both with Arizona law on the subject and the lease between Tower Plaza and Walgreen.

By the terms of that lease, full authority was granted to the lessee to sublease without prior approval of the lessor as long as the original lessee remained liable on the lease. Moreover, it was not all assignments of the lease which were prohibited, only those to entities other than the parent corporation or subsidiaries of the lessee. Thus,

it appears that what lessor was bargaining for was the continued liability of Walgreen, not a prohibition of a transfer of Walgreen's interest. The Walgreen/Fed-Mart transaction fully protects this bargained-for position on behalf of Tower Plaza.

What Tower Plaza is contending in reality is that in hindsight it should have prohibited or controlled subleases as well as assignments. This, of course, is not what was agreed upon. Under Arizona law, the arrangement between Walgreen and Fed-Mart was a sublease, which is fully permitted under the terms of the original lease. The trial court properly determined that the Walgreen/Fed-Mart transaction did not constitute a breach of the lease.

Based upon the foregoing, the trial court properly determined, as a matter of law, Walgreen's actions did not result in a breach of its lease with Tower Plaza, and its judgment so holding is affirmed.

CORCORAN, J., and McFATE, J. (retired), concur.

*Note*: The Honorable Yale McFate, a retired judge of a court of record, was authorized to participate by the Chief Justice of the Arizona Supreme Court pursuant to Arizona Const., Art. VI, § 20.