**In re KDT INDUSTRIES, INC. f/k/a King's Department Stores, Inc. d/b/a King's, Barker's, Kens, Coronet Cosmetics, Barkleigh, Mammoth Mart, Debtors,**

**NET REALTY HOLDING TRUST, Plaintiff,**

**v.**

**KING'S–MAMMOTH, INC., Defendant.**

**Bankruptcy Nos. 82 B 11453 to 82 B 11515.**

**Adv. No. 82–6136–A.**

United States Bankruptcy Court, S.D. New York.

May 16, 1983.

Baron & Gleich, Great Neck, N.Y., for plaintiff; Stephen B. Gleich, Great Neck, N.Y., of counsel.

Goulston & Storrs P.C., Boston, Mass., for defendant; James F. O'Brien, Boston, Mass., of counsel.

## DECISION ON SUMMARY JUDGMENT MOTION (STORE # 226)

PRUDENCE B. ABRAM, Bankruptcy Judge.

The complaint in this adversary proceeding was filed on September 26, 1982. The plaintiff, Net Realty Holding Trust ("Net Realty"), is the owner of the Tri-City Shopping Center, Somersworth, New Hampshire, in which defendant King's-Mammoth, Inc. ("King's") Store # 226 is located. The plaintiff seeks

"An order vacating the stay to permit plaintiff to terminate the lease upon the breach by defendant of the implied and express covenants that it will operate its business in such manner as to achieve the maximum gross sales and upon its constructive abandonment of the premises." Complaint at ¶ 5.

An answer was filed on October 29, 1982 denying Net Realty's entitlement to the relief requested. On December 21, 1982, King's filed a notice of motion for summary judgment on the grounds that there is no genuine issue as to any material fact and that King's is entitled to a judgment dismissing the proceeding as a matter of law. In support of the motion, King's submitted the affidavit of Marjorie Ann Hession, Lease Administrator and Assistant Secretary of KDT Industries, Inc. ("KDT"), the parent corporation of these related debtors. The affidavit states that Store # 226 is currently open and operating, that there are no plans or intention to abandon the premises or close the operations at Store # 226, and further that all use and occupation has been paid since August 5, 1982, the date the Chapter 11 petition was filed.

In response to the motion, the attorney for Net Realty filed a conclusory affidavit which asserts that there are factual issues that can be determined only at trial, that this court is without jurisdiction to entertain this motion and that the motion is improper because of the pendency of a discovery dispute. The interrogatories propounded to Net Realty which deal with the basis for the allegations of the complaint and the answers thereto are appended as an appendix to Net Realty's brief on the motion.

This court is authorized to act in this matter by virtue of Emergency Bankruptcy Rule I adopted by the United States District Court for the Southern District of New York on December 23, 1982.

In opposing a motion for summary judgment, a party may not simply rely on the contentions of its pleadings. *United States v. Pent-R-Books, Inc.,* 538 F.2d 519, 529 (2d Cir.1976), *cert. denied,* 430 U.S. 906, 97 S.Ct. 1175, 51 L.Ed.2d 582 (1977). Nor can the opposition rely on mere conclusory allegations or denials. *SEC v. Research Automation Corp.,* 585 F.2d 31, 33 (2d Cir. 1978). The opponent must bring to the court's attention some affirmative indication supporting his version of the facts. *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 441, 445 (2d Cir.1980). The possibility that issues of fact might be elicited on cross-examination is not sufficient. *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968). Net Realty has not met this burden. For example, nothing but conclusory statements are offered as to the allegedly material fact that King's manner of operation constitutes

constructive abandonment notwithstanding that the store is open and available for inspection by the landlord on a daily basis. Likewise allegations as to the effect on other tenants of KDT's manner of conducting its business and that the rent reserved in the lease is nominal have been supported by nothing but conclusory allegations. The discovery dispute does not preclude consideration of this summary judgment motion since the asserted material facts are within the control of Net Realty to show.

No dispute exists as to any material fact. For the reasons set forth below, this court grants summary judgment to King's and dismisses the complaint.

Net Realty seeks to have this court imply a covenant by the tenant to operate the premises so as to maximize percentage rent. Percentage rent is rent based on gross sales, as defined in a lease, and is payable whether or not a tenant operates at a profit. It is conceded that there is no such express covenant in the lease for Store # 226. There are covenants in the lease providing for the payment of percentage rent (Article 6), real estate taxes (Article 7), that the taxes are to be deducted from the percentage rent payable (Addendum Paragraph 10), use (Article 11), and hours of operation, a restriction on tenant's operation of a similar business within a five-mile radius and the landlord's operation of a shopping center with a similar store within a five-mile radius (Article 40).

Implied covenants are disfavored. Only two circumstances are held to warrant implication of a covenant: (1) the parties thought it so obvious it did not need stating or (2) it is a necessary result of what is stated, either as an implication of the language used or it is indispensible to effectuate the intention of the parties. *Cousins Inv. Co. v. Hastings Clothing Co.,* 45 Cal. App.2d 141, 113 P.2d 878, 882 (1941).

A review of the cases in which an attempt to have a covenant implied relative to a percentage rent clause is helpful in seeing how the lease at issue here in fact handles the issues surrounding the percent-age rent clause. From a landlord's perspective, a percentage rent clause is valuable only to the extent that the tenant actually operates the store and has sales sufficient to bring the clause into operation. Thus, the landlord would like assurance that the store wil be continuously operated as a store, see *Cousins Inv. Co. v. Hastings Clothing Co., supra* (court refused to imply a covenant requiring the lessee to remain in business until the end of the term of the lease) and *Lippman v. Sears Roebuck & Co.,* 44 Cal.2d 136, 280 P.2d 775, 779 (1955), *vacating on other grounds* 271 P.2d 891, 896–7 (1954) (use clause permitting occupancy for sale and storage did not require tenant to use for both purposes, storage alone being an acceptable use); that the owners of the store will not operate a competing store in the immediate vicinity, see *Percoff v. Solomon,* 259 Ala. 482, 67 So.2d 31 (1953) (covenant against operation of additional store would not be implied) and *Stop & Shop, Inc. v. Ganem,* 347 Mass. 697, 200 N.E.2d 248 (1964) (no basis for implying a covenant against opening a competing store a half-mile away); and that the store will be used for a specific purpose, *Hicks v. Whelan Drug Co.,* 131 Cal.App.2d 110, 280 P.2d 104 (1955) (although lease permitted operation of lunch counter, it did not require it, tenant was within rights to wall off selling floor space to reduce size of store particularly in light of change in neighborhood and covenant to operate so as to make it mutually profitable to landlord and tenant would not be implied.)

The lease for Store # 226 prohibits the tenant from operating a store within a 5-mile radius, requires that the store be continuously operated and specifies the minimum hours of operation and restricts the use of the premises to operation of a department store, junior department store or discount department store and specifically prohibits certain uses. Net Realty urges that, despite these express provisions in the lease which deal with the pitfall areas just described, the court must find that there is an implied covenant to maximize sales, and thus percentage rent. This court declines to do so. The thirty-five-page lease is obvi-

ously the product of substantial negotiation; it is detailed and precise. The clause sought to be implied is not one so obvious as not to need stating or necessary to effectuate the parties' intentions. Nor is the clause such as to suggest that the tenant would have readily agreed if it had been brought to its attention. The tenant's motivation is to operate the store profitably. The tenant's motivation and the landlord's interest normally coincide. But a covenant such as sought to be implied here would restrict management prerogatives of the tenant. Moreover the clause sought to be implied seems fraught with endless difficulties of construction. Should the tenant run a sale? What merchandise should it buy? Must it borrow for working capital? These are only a few of the questions which come to mind.

A covenant to act in good faith has been implied. See *Goldberg, 168–05 Corp. v. Levy,* 170 Misc. 292, 9 N.Y.S.2d 304 (1938), *modified on other grounds,* 256 App.Div. 1086, 11 N.Y.S.2d 315 (1939). See also, *Stop & Shop, Inc. v. Ganam,* 347 Mass. 697, 200 N.E.2d 248, 253 (no indication that tenant in closing store acted otherwise than as its sound business judgment dictated in promoting its business and there was no showing that the discontinuation of operations was for spite or to inflict harm.) There is not even a hint of bad faith in this case. King's general business problems may have hindered its operations and reduced gross sales at Store # 226 but nothing singles this store out from the other stores in the KDT group. Moreover any decline in sales from Store # 226 in 1982 had no impact on the landlord because the decline did not in fact affect the percentage rent payable by King's. Although both Net Realty and King's have stated that no percentage rent has been paid in recent years, this is not the case. Paragraph 10 of the Addendum to the lease overlaps the real estate taxes and the percentage rent, and the real estate taxes are a credit against the percentage rent due. In 1981 the real estate taxes paid by King's were approximately $40,000. Thus gross sales would have had to be approximately $6.5 million before the credit against the percentage rent resulted in the payment of "pure" percentage rent. That figure is substantially in excess of the gross sales figure for any recent year.

Net Realty asserts that necessity for implying the covenant is the stronger because King's is an anchor tenant in a shopping center. Neither of the cases cited by Net Realty involving shopping center anchor tenants involve assertions of implied covenants to operate for mutual profit. In *Ingannamorte v. Kings Super Markets, Inc.,* 55 N.J. 223, 260 A.2d 841 (1970), the court was confronted with an anchor tenant who had closed its store, stated that it had no present plans to reopen, but refused to surrender the premises to the landlord. The court found in light of all the facts that it was appropriate to compel the tenant to make an election to resume operations forthwith or surrender the premises. Likewise, in *Dover Shopping Center, Inc. v. Cushman's Sons, Inc.,* 63 N.J.S.Ct. 384, 164 A.2d 785 (1960), the court was confronted with an apparently major shopping center tenant who had shut down operations completely notwithstanding a clause in the lease compelling operations. The court directed resumption of operations.

Net Realty seeks to get around the holdings in the cases cited above by alleging that the rent reserved is not substantial. This allegation must also fail. No facts have been submitted to support the allegation. This was not a lease for a clearly nominal sum. The minimum rent is $65,000 per annum and in addition the tenant must pay the allocated real estate taxes, which were about $40,000 in 1981. These amounts are not nominal, even if in these days of hyperinflation it is not as meaningful a dollar amount as it was in 1969 when the lease was signed. A nominal rent is the modern-day equivalent of a peppercorn. See *Lippman v. Sears Roebuck & Co., supra* (minimum rent of $285 a month held to be nominal in light of circumstances surrounding execution of lease and thus tenant required to pay percentage rent.)

Turning to the alleged constructive abandonment, the court likewise finds the claim

legally insufficient. Net Realty's factual allegations on which it bases this claim are set forth in its answers to interrogatories. It appears that shortly after learning of the KDT Chapter 11 filings, the landlord caused an inspection of Store # 226 to be made and was advised that the store was sparsely stocked, stockrooms were virtually empty and merchandise was arranged to appear more voluminous. The only basis for the constructive abandonment is the insufficiency of merchandise in an admittedly open store. King's has not closed its operations, it desires to continue operations and management of the operations at the location have recently been assumed by Ames Department Stores, all of which gives every indication that the operation is improving rather than deteriorating. The claim fails to rise to the level of legal sufficiency, particularly in light of the explicit use clause in the lease.

Implied covenants are not a means of relieving a party from a bargain made, even if it may be a harsh or ill thought out bargain. The bad bargain here, if there is one, is the result of the overlap of the real estate tax obligation on the percentage rent clause. Even if this court were to imply the covenant sought by the landlord, it would not result in the payment of any percentage rent over the taxes in the immediate future and might not result in the payment of any "pure" percentage rent over the balance of the term of the lease.

Although the discussion above centers on the legal grounds asserted for the termination of the lease for Store # 226, these questions arise in the context of a request for a modification of the automatic stay. Net Realty asserts that the stay should be modified because of lack of adequate protection and because Store # 226 is not necessary for an effective reorganization since it is merely one of a great number of stores. As to the adequate protection point, the use and occupation is being paid currently[1] and that is all that is re-

quired. See *In re Cheshire Molding Co.,* 9 B.R. 309 (Bkrtcy.Ct.D.Conn.1981). As to the second point, this court cannot accept that a debtor with numerous stores is worse off than one with only two or three. Obviously no single store in a large chain would normally be critical to the reorganization effort; however, the group of stores as a whole is necessary for an effective reorganization. If adequate protection exists as it does then it is not necessary to reach the question of whether the property is necessary to an effective reorganization. No cause exists for modification of the stay under § 362(d)(1) of the Bankruptcy Code since the court has found that the landlord has no right to terminate the lease and no other cause exists.

Submit judgment.

---

1. Counsel for the landlord has asserted that there are unpaid real estate taxes but has not specified the details of this claim. King's has

offered to pay any post-petition real estate taxes and has the capacity to make the payment.