CASA D'ANGELO, INC., Appellant,

v.

A & R REALTY COMPANY, Appellee.

No. 01A04–8903–CV–93.

Court of Appeals of Indiana, Fourth District.

April 30, 1990.

Daniel K. Leininger, Burt Blee Dixon & Sutton, Fort Wayne, for appellant.

Scott T. Niemann, Catherine C. Ediger, Rothberg Gallmeyer, Fruechtenicht & Logan, Fort Wayne, for appellee.

MILLER, Judge.

Tenant, Casa D'Angelo, Inc., decided to phase out its restaurant business in the last year of its five (5) year lease with A & R Realty Company, and did so, closing the establishment but paying its base rent during the last four (4) months of the lease. This was all much to the chagrin of landlord A & R which sued Casa D'Angelo claiming that such action breached the express terms of the lease and/or breached an implied covenant of good faith by failing to operate a restaurant at the leased premises in the same manner and during the same business hours that the restaurant had been operated during the earlier years of the lease. A & R claimed Casa D'Angelo thereby failing to generate percentage rent to which the lessor would have been entitled under the terms of the lease.

## ISSUE

Casa D'Angelo raises a number of issues, however, one issue is dispositive:

> Whether Casa D'Angelo was entitled to summary judgment because, as a matter of law, it violated no express or implied covenant of the lease.

We reverse and remand with instructions to enter summary judgment for Casa D'Angelo.

## FACTS

Evidence before the trial court at the summary judgment hearing established that in 1977, Thomas Casaburo and James D'Angelo formed Casa D'Angelo, Inc., an Italian restaurant business. A & R owned property in Fort Wayne, Indiana, housing two tenants, who shared parking facilities.

One of the tenants was China House, a Chinese restaurant. The other tenant was a fabric store. China House was subleasing the building from King Henry VIII, another restaurant. Casa D'Angelo agreed to sublease the building from China House. The sublease provided for a base rent of $825.00 per month and additional rent in the amount of 5% of gross sales over $200,000.00 per year. The building was extensively repaired and remodeled and Casa D'Angelo began operation of its restaurant in October, 1977.

In 1978, Alexander Azar, one of the partners of A & R approached Casa D'Angelo about a lease between Casa D'Angelo and A & R. Azar was concerned that the existing sub-sublease was creating confusion. Casa D'Angelo agreed to lease the building directly from A & R and the parties entered into a lease between Casa D'Angelo and A & R. The term of the lease was from July 5, 1978 to November 1, 1982. Casa D'Angelo had an option to renew the lease for one successive five year term with all terms of the lease remaining the same. In 1982, Casa D'Angelo exercised its option and renewed the lease for an additional five year term.

Neither Casaburo nor D'Angelo had any experience in the restaurant business. Initially they performed all of the work associated with the restaurant themselves. Despite their lack of experience, the business prospered and sales steadily increased.

In 1978, Casa D'Angelo exceeded $200,000.00 in gross sales and paid $2,500.00 in percentage rent for the year. The parties stipulated that Casa D'Angelo paid the following amounts in percentage rent: [1]

| | | |
|---|---|---|
| 1978 | – | $ 2,500.00 |
| 1980 | – | $ 9,944.00 |
| 1981 | – | $18,752.00 |
| 1982 | – | $16,164.00 |
| 1983 | – | $19,195.00 |
| 1984 | – | $26,640.00 |
| 1985 | – | $31,467.00 |
| 1986 | – | $36,230.00 |

In 1982, Casa D'Angelo opened a second restaurant on Fairfield Avenue in Fort Wayne. In 1985, Azar approached Casaburo and D'Angelo about taking over a restaurant operated by Azar's son. This restaurant was within a mile of the A & R property. At first, Casaburo and D'Angelo had some reservations about opening another restaurant in close proximity to their first restaurant but agreed to do so. The restaurant was re-opened under the name, T.J. Pasta's.[2] Therefore, by the end of 1985, Casa D'Angelo was operating three restaurants in Fort Wayne.

In August, 1986, Casa D'Angelo entered into a lease for a fourth restaurant. This restaurant was also within one mile of the A & R property. It was larger than the A & R property and had better parking facilities. Casa D'Angelo intended to close its restaurant in the A & R property when its lease expired on November 1, 1987. Casa D'Angelo opened the new restaurant in December, 1986. At that time, Casa D'Angelo changed its operation of the A & R facility. Instead of offering a full dinner menu to walk-in customers, the menu was limited to soup, salad and sandwiches and full bar service. Casa D'Angelo also moved all of its banquet and carry out services to the A & R facility. These services constituted only a small portion of Casa D'Angelo's business. The staff at the A & R facility was cut from fifteen full time and fifteen part time employees to three or four full time employees with additional employees brought in to help with banquets. Customers who came to the A & R facility for a full meal were directed to Casa D'Angelo's other restaurants. In addition, table tents were placed in the other restaurants informing customers of the change in operation and a sign was placed in front of the A & R facility giving the same information. The business hours at the A & R facility were also reduced.

Gross sales at the A & R facility fell dramatically. In November, 1986 gross

1. The parties also agreed Casa D'Angelo paid percentage rent in 1979, but could not agree on the amount.

2. The fact that Azar's son owned the restaurant and Azar initiated the transfer was excluded from the jury by a motion in limine. However, the information was before the court at the time of the summary judgment hearing.

sales for the restaurant were $88,547.17. In December, 1986 gross sales dropped to $15,355.77 and continued to drop in 1987.

On December 8, 1986, A & R sent a notice of default to Casa D'Angelo claiming it was not operating a restaurant or keeping the restaurant open for normal business hours in violation of the lease provisions. Casa D'Angelo continued the down scaled operation of the restaurant. On July 1, 1987, A & R filed suit on the action before us. On July 16, 1987, Casa D'Angelo permanently closed the A & R facility. Total gross sales throughout 1987 did not exceed $200,000.00 and Casa D'Angelo paid no percentage rent for that year; however, it continued to pay the $825.00 base monthly rental until the lease terminated on November 1, 1987.

Additional facts will be given when necessary to our decision.

### DECISION

Casa D'Angelo moved for summary judgment claiming there were no genuine issues of material fact and that it was entitled to summary judgment as a matter of law because the undisputed facts established that it had breached no express or implied covenant of the lease. The trial court denied the motion and the case was tried, resulting in a jury verdict for A & R. Casa D'Angelo argues the trial court erred in denying its motion for summary judgment. We agree.

In reviewing a denial of summary judgment, this court applies the same standards as the trial court. *McMahan v. Snap On Tool Corp.* (1985), Ind.App., 478 N.E.2d 116. Summary judgment is proper only if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits and testimony, if any, show there is no genuine issue of material fact and that the moving party is entitled to

judgment as a matter of law. Ind.Trial Rule 56(C). All doubt as to the existence of a genuine issue of material fact must be resolved in favor of the nonmoving party and all reasonable inferences must be resolved against the moving party. *Witham v. Norfolk and Western Railway Co.* (1989), Ind.App., 535 N.E.2d 1197.

Casa D'Angelo claims that, as a matter of law, it has violated no express or implied covenant of the lease. It also argues that the substance of A & R's complaint was an allegation that Casa D'Angelo had violated an implied in fact covenant to generate percentage rent. A & R argues that it is not claiming that Casa D'Angelo violated an implied covenant to generate percentage rent, but rather, that it violated an implied in law covenant of good faith. We agree with Casa D'Angelo that the substance of A & R's complaint is that Casa D'Angelo violated an implied covenant to generate percentage rent. In its complaint, A & R's claimed damages rested solely upon Casa D'Angelo's failure to operate the restaurant in a manner so as to generate percentage rent. Unless Casa D'Angelo had a duty under the terms of the lease to generate percentage rent, A & R has no basis for its claim of damages. There is no question that Casa D'Angelo continued to pay the base rent ($825.00 per month) until the end of the lease. A & R does not claim that Casa D'Angelo's business enhanced the business of its only other tenant. On the contrary, the evidence establishes that the other tenant, a fabric store, competed with Casa D'Angelo for parking facilities. Therefore, the only basis for an award of damages was the failure to generate percentage rent.[3] We agree with the Massachusetts Supreme Court, which, when faced with a similar claim of violation of an implied covenant of good faith,[4] stated:

---

3. We note that at trial, the jury was instructed that A & R's damages were to be based on the amount of percentage rent Casa D'Angelo would have paid had it continued its former level of business. Although this instruction is not relevant to the summary judgment proceeding, it supports the conclusion that A & R's claim is

based solely on the failure to generate percentage rent.

4. This case involved a declaratory judgment action by the lessee who sought to cease operating a supermarket on the leased premises. The lease contained a percentage rent clause. The lessor filed a counterclaim alleging the lessee

"The allegation 'not in good faith' adds nothing to the facts stated. In context, it says no more than that the plaintiff has acted in violation of implied obligations of the lease."

*Stop & Shop, Inc. v. Ganem* (1964), 347 Mass. 697, 200 N.E.2d 248, 253.

■ Although we agree that a lessee might violate the implied covenant of good faith without violating an implied in fact covenant or an express covenant, the facts before the court do not support such a conclusion. As this court explained in *Stath v. Williams* (1977), 174 Ind.App. 369, 367 N.E.2d 1120, 1124:

> "Bad faith" is not simply bad judgment or negligence, rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity. It is different from the negative idea of negligence in that it contemplates a state of mind affirmatively operating with furtive design or ill will. *Vickers v. Motte* (1964), 109 Ga.App. 615, 137 S.E.2d 77.

In *F.W. Woolworth Co. v. Plaza North, Inc.* (1986), Ind.App., 493 N.E.2d 1304, 1311, this court, in discussing a similar allegation in a case involving a percentage rent lease, explained:

> Plaza North argues that in a lease agreement to pay percentage rent, the lessee has impliedly agreed to act in good faith so as not to deprive the lessor of his percentage rent. *See Goldblatt Bros., Inc. v. Addision Green Meadows, Inc.* (1972), 8 Ill.App.3d 490, 290 N.E.2d 715; *William Berland Realty Co. v. Hahne & Co.* (1953), 26 N.J.Super. 477, 98 A.2d 124. We agree, but conclude there has been no allegation that Woolworth has acted in any manner so as to indicate bad faith. The undisputed facts indicate that in late 1982, during a severe economic climate, Woolworth made a decision to close its Woolco stores nationwide. There is no indication this decision was in any way based on the percentage rent clause in its lease with Plaza North. Woolworth's action was not taken to deprive Plaza North of percentage rent but was a large scale business decision....

violated an implied covenant of good faith by

In this case, there are no facts to support an inference that Casa D'Angelo changed its operation of the restaurant in order to deprive A & R of its percentage rent. Instead, the facts establish that the operation was changed because Casa D'Angelo lacked sufficient trained personnel and resources to continue operating the restaurant on the same basis as before.

However, A & R claims that *F.W. Woolworth Co.*, was significantly narrowed in *First Federal Savings Bank of Indiana v. Key Markets* (1988), Ind.App., 532 N.E.2d 18. In *First Federal*, this court held that a commercial lessor could not unreasonably withhold consent to the lessee's assignment of a lease, but instead must act as a reasonably prudent person would act under similar circumstances. The court also stated that *F.W. Woolworth, supra*, was limited to its facts.

First, we note that the facts in *F.W. Woolworth* are more akin to the facts in this case than the facts in *First Federal*. In *F.W. Woolworth*, the lessor claimed the lessee violated an implied covenant of good faith when it ceased operations and sublet the premises, thereby depriving the lessor of percentage rent. In *First Federal*, the lessee sought declaratory relief when the lessor refused to consent to an assignment, and cancelled the lease. In requiring the lessor to act in a commercially reasonable manner, the *First Federal* court noted that the refusal to consent to an assignment was a restriction on free alienation and therefore regarded with disfavor by the courts. No such competing principle is present in this case.

Second, even applying the commercial reasonableness standard, the facts do not support a conclusion that Casa D'Angelo acted unreasonably. On the contrary, the facts support only an inference that Casa D'Angelo did no more than exercise sound business judgment. There is no evidence to support an inference that Casa D'Angelo acted as it did for a dishonest purpose or in an attempt to damage A & R.

opening two competing stores in the area.

■ Therefore, we must consider the substance of A & R's complaint—that Casa D'Angelo violated an implied covenant to generate percentage rent. However, before reaching this issue we must consider A & R's claim that Casa D'Angelo violated the following express covenants:

> *Use.* Lessee shall use the premises for the operation of a restaurant facility and for no other purpose without first obtaining the written consent of Lessor thereof.
>
>      \*     \*     \*     \*     \*     \*
>
> *Business Hours.* Lessee shall keep the leased premises open for business during normal business hours for a restaurant.

Casa D'Angelo argues that the use provision does not require it to operate a restaurant on the premises, but merely restricts its use of the premises for any other purpose. It also points out that the lease contains no provision for continuous operation. We agree. In *McKnight–Seibert Shopping Center, Inc. v. National Tea Co.* (1979), 263 Pa.Super. 292, 397 A.2d 1214, 1216, the court stated:

> Generally speaking, a provision in a lease that the premises are to be used for a certain prescribed purpose imports no obligation on the part of the lessee to use or continue to use the premises for that purpose; such a provision is a covenant against a noncomplying use, not a covenant to use.

(Quoting *Dickey v. Philadelphia Minit–Man Corp.* (1954), 377 Pa. 549, 552, 105 A.2d 580, 581.) *See also, Kretch v. Stark* (1962), 26 Ohio Op.2d 385, 193 N.E.2d 307. Here, the use provision in the lease does not expressly require Casa D'Angelo to operate or continue to operate a restaurant on the premises. It is not prohibited from closing by this provision.

■ A & R also argues Casa D'Angelo has violated the business hours provision, claiming this provision requires Casa D'Angelo to continuously operate the restaurant during normal business hours [5] throughout the term of the lease. Casa D'Angelo argues this provision merely requires that it operate during normal business hours so long as it remains in operation. A & R also claims that when these provisions are read together along with the provision for percentage rent there is an implied covenant to continuously operate the restaurant throughout the term of the lease.[6] Even if the use provision and the business hours provision could be construed to require continuous operation, unless Casa D'Angelo has an implied duty to generate percentage rent, A & R has failed to allege any damages from the violation of such covenant. It is undisputed that Casa D'Angelo continued to pay the base rent throughout the term of the lease. Therefore, we will consider these provisions only as they apply to an implied covenant to generate percentage rent.

We now turn to the crux of A & R's complaint—whether Casa D'Angelo violated an implied covenant to generate percentage rent.

As the Oklahoma Supreme Court explained in *Mercury Investments Co. v. F.W. Woolworth Co.* (1985), Okla., 706 P.2d 523, there is a distinction between implied-in-law covenants and implied-in-fact covenants:

> Implied covenants are generally grouped into two categories: implied-in-fact and implied-in-law. *A covenant implied-in-law*—i.e., a constructive covenant—is presumed from the relation of the parties and the object to be achieved by the agreement. Public policy supplies the basis of such covenant without regard to the intention of the parties. In other words, it is but a legal duty imposed by law and created otherwise than by assent and without any words or conduct they are interpreted as promissory. Public policy extends to freedom of contract

---

5. We note that "normal business hours" is not defined in the lease, and is ambiguous. Restaurants observe a wide variety of business hours, ranging from 24 hours a day, seven days a week to only a few hours a day and only certain days of the week.

6. A & R does not characterize its argument in this manner, however, we believe this is an accurate statement of its substance.

insofar as private dealing is restricted by law for the good of the community. *Cameron & Henderson v. Franks*, 199 Okl. 143, 184 P.2d 965, 972 (1947). *A covenant implied-in-fact*, in contrast, is deemed to be more akin to the nature of an express covenant because it is raised by inference from words used in the agreement to effect the intention of the parties. *See* 3 Corbin on Contracts § 562, p. 286 (1960); 1 Tiffany, the Law of Real Property § 89, p. 316 (1936); 1 Friedman on Leases § 6.9, pp. 197–199 (1983).

*Id.* at 529, n. 14.

■ Implied-in-fact covenants are not favored in the law. *Keystone Square v. Marsh Supermarkets, Inc.* (1984), Ind. App., 459 N.E.2d 420. As the court in *Mercury Investment Co., supra* at 530, explained:

> The general rule is that (1) the obligation must arise from the presumed intention of the parties as gathered from the language used in the written instrument itself or it must appear from the contract as a whole that the obligation is indispensable in order to give effect to the intent of the parties; and (2) it must have been so clearly within the contemplation of the parties that they deemed it unnecessary to express it.

*See also Cousins Investment Co. v. Hastings Clothing Co.* (1941), 45 Cal.App.2d 141, 113 P.2d 878.

■ Generally, courts in other jurisdictions have refused to find an implied covenant to generate percentage rent or to continuously operate, when the agreed base rent is substantial. *Masciotra v. Harlow* (1951), 105 Cal.App.2d 376, 233 P.2d 586; *Cousins Investment Co., supra; Stop & Shop, Inc., supra; Bobenal Investment, Inc. v. Giant Super Market* (1977), 79 Mich.App. 31, 260 N.W.2d 915; *Kretch, supra; Monte Corp. v. Stephens* (958), Okla., 324 P.2d 538; *Woodland Theatres, Inc. v. ABC Intermountain Theatres, Inc.* (1977), Utah, 560 P.2d 700. Conversely, when the base rent is insubstantial, the

courts have found such implied covenants. *Lippman v. Sears Roebuck & Co.* (1955), 44 Cal.2d 136, 280 P.2d 775; *Sinclair Refining Co. v. Davis* (1933), 47 Ga.App. 601, 171 S.E. 150; *Bastian v. Albertson's Inc.* (1982), 102 Idaho 909, 643 P.2d 1079. Although substantial rent has been defined as more than nominal rent—"the modern-day equivalent of a peppercorn." *In re KDT Industries, Inc.* (Bankr.S.D.N.Y. 1983), 30 B.R. 252, 255, the current trend is to define substantial rent as a fair rental value for the premises. *See Bastain, supra.* However, the burden of showing that the agreed base rent is not a fair rental value is upon the lessor—here, A & R. *Id.*

Finally, a few courts have found an implied covenant to generate percentage rent or to continue operation, even when the base rent is substantial, where the provisions of the lease and the surrounding circumstances at the time of its execution show that the parties intended the payment of percentage rent or the continuous operation of the tenant's business to have been a substantial consideration for the lease. *Walgreen Arizona Drug v. Plaza Center Corp.* (1982), App., 132 Ariz. 512, 647 P.2d 643 (magnet tenant in shopping center, also evidence base rent was not fair rental value); *Selber Bros., Inc. v. Newstadt's Shoe Stores* (1940), 194 La. 654, 194 So. 579 (parties based rental agreement on past performance of specific type of shoe store); *Ingannamorte v. Kings Super Markets, Inc.* (1970), 55 N.J. 223, 260 A.2d 841 (leased premises part of integrated shopping center); *Tooley's Truck Stop, Inc. v. Christanthopouls* (1970), 55 N.J. 231, 260 A.2d 845 (economic interdependence between lessor's and lessee's operations); *Dover Shopping Center, Inc. v. Cushman's Sons, Inc.* (1960), 63 N.J.Super. 384, 164 A.2d 785 (lease contained express continuous operation clause and required tenant to cooperate with other tenants of shopping center).

Here, A & R agrees that the base rent was substantial, but argues that the percentage rent was also substantial.[7] A & R

---

**7.** Because we hold that the undisputed facts establish that the parties did not intend the percentage rent to be a substantial consideration for the lease agreement, it is unnecessary to

misconstrues the issue. It is the parties' intention at the time the lease was executed which is determinative, not the later performance of the lease. *Keystone Square, supra; Loving v. Ponderosa Systems, Inc.* (1983), Ind.App., 444 N.E.2d 896. It is undisputed that Casa D'Angelo was a new venture, and neither Casaburo nor D'Angelo had any experience in operating a restaurant. Courts in other jurisdictions have considered the parties' reasonable expectations concerning the payment of percentage rent to be controlling and have required such expectations to be based on more than mere speculation. *Masciotra, supra; Selber Bros., supra; Williams Berland Realty Co. v. Harne & Co.* (1953), 26 N.J.Super. 477, 98 A.2d 124. In *Masciotra, supra,* the court was faced with facts similar to those in the case before us. The tenant opened a restaurant and agreed to pay both base and percentage rent. The restaurant was a success. While the base rent was $250.00 per month, the tenant paid an average of $1,000.00 per month in percentage rent. Before the end of the lease, the tenant opened a new restaurant under the same name as the first restaurant. It then changed the name and the operation of the original restaurant resulting in a substantial decrease in percentage rent. As in this case, the original restaurant was a new venture. The court noted that the parties had no basis for an expectation of percentage rent and refused to find an implied covenant to continue the same type of operation, stating:

"Under the circumstances it can only be concluded that the parties considered the stipulated minimum rent to be in itself fair and adequate and any additional sum was in the nature of a bonus which the lessee was willing to pay if business exceeded his expectations."

*Id.* 105 Cal.App.2d at 380, 233 P.2d at 589.

We agree with this reasoning. Here, Casa D'Angelo was an entirely new venture. At the time the lease was executed, the parties could not have known if it would succeed or fail. Indeed, considering Casaburo's and D'Angelo's lack of experience in the restaurant business, failure was a distinct possibility. The substantial percentage rent generated by Casa D'Angelo's success was nothing more than a windfall for A & R.

In addition, there was no allegation or facts to support an inference that A & R depended on Casa D'Angelo's operation to enhance the operation, and value of its surrounding property. Unlike the cases involving integrated shopping centers and magnet tenants,[8] there was no evidence that Casa D'Angelo's operation drew customers to A & R's other tenant—thereby increasing its percentage rent—or encouraged other tenants to lease the property. Instead, the facts revealed that A & R had only one other tenant, a fabric store, and that Casa D'Angelo's operation may have interfered with its business rather than enhancing it because the two businesses competed for available parking space.

Here, there was no evidence before the trial court or even an allegation that the agreed base rent was not a fair rental value, or that A & R depended on Casa D'Angelo to enhance the rental value of its surrounding property. The undisputed facts permit only one inference, that the parties did not consider the percentage rent to be a substantial consideration for the lease. Therefore, we reverse, with instructions to enter summary judgment for Casa D'Angelo.

CONOVER and BUCHANAN, JJ., concur.

decide whether a showing of substantial base rent is in itself sufficient to defeat a claim of an implied covenant to generate percentage rent.

**8.** *See Walgreen Arizona Drug, supra; Ingannamorte, supra; Tooley's Truck Stop, supra; Dover Shopping Center, Inc., supra.*