NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

ELIZABETH M. BRAZEE
REVOCABLE TRUST, *Plaintiff/Appellee,*

*v.*

PHZ-MSC, LLC, *Defendant/Appellant.*

No. 1 CA-CV 21-0364
FILED 6-21-2022

Appeal from the Superior Court in Maricopa County
No. CV2018-009594
The Honorable Timothy J. Thomason, Judge

**AFFIRMED**

COUNSEL

MacQueen & Gottlieb, PLC, Phoenix
By Benjamin L. Gottlieb, Brandon P. Bodea, Devin M. Tarwater
*Counsel for Plaintiff/Appellee*

Francis J. Slavin, PC, Phoenix
By Francis J. Slavin, Daniel J. Slavin
*Counsel for Defendant/Appellant*

**MEMORANDUM DECISION**

Vice Chief Judge David B. Gass delivered the decision of the court, in which
Presiding Judge Paul J. McMurdie and Judge Angela K. Paton joined.

**G A S S**, Vice Chief Judge:

¶1          PHZ-MSC, LLC (PHZ) appeals the superior court's order granting summary judgment on its breach of contract counterclaim. PHZ argues the Elizabeth M. Brazee Revocable Trust (the Trust) breached an implied promise in their lease to provide a legally operable business to PHZ. Because the lease's express terms neither contain nor infer such a promise, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶2          On appeal of an order granting summary judgment, this court views the facts in the light most favorable to the non-movant—here, PHZ. *See Andrews v. Blake*, 205 Ariz. 236, 240, ¶ 12 (2003).

¶3          In 1994, Elizabeth Brazee purchased a property at 3613 E. Van Buren Street in Phoenix to open an adult-entertainment club. In 2003, she leased the property to a prior tenant who later assigned the lease to Diesel 01, LLC (Diesel) to operate an adult-entertainment club called the Pink Rhino Cabaret (Pink Rhino). In 2011, Ms. Brazee conveyed the property to the Trust.

¶4          Though the property was originally zoned for general commercial purposes—allowing adult entertainment—a 2012 amendment to Phoenix's relevant zoning ordinances rendered the property's adult-oriented entertainment business a legal, nonconforming use. In July 2015, the Phoenix police department seized Diesel's liquor license for the owner's alleged crimes. Under Phoenix City Code, the operator of an adult-entertainment cabaret must possess either a cabaret license or a liquor license. Phoenix City Code § 10-133.A (cabaret license), .G (liquor license). Even so, the Pink Rhino continued operating in 2015 without one of the required licenses. After Diesel told the Trust about Phoenix seizing its license, the Trust allowed Diesel time to find a buyer for the business. But in January 2016, when Diesel's lease expired and it had not found a buyer, the Trust "padlocked and re-keyed" the property.

¶5          Because, under Phoenix City Code, a legal nonconforming use lapses if not used, the Trust sought a new tenant with a liquor license to continue operating an adult-entertainment club on its property. *See* Phoenix Zoning Ordinance § 903.A. In January 2016, the Trust leased the property to Barton Holloway Arizona, LLC (Barton)—which possessed a Series 6 liquor license. Barton sold its license and assigned its lease to PHZ.

The Trust and PHZ signed a new lease in May 2016. During this time, the Pink Rhino remained closed.

¶6          PHZ quickly pursued an administrative determination regarding the property's nonconforming-use rights. Phoenix's zoning administrator issued an informal determination finding the nonconforming-use rights had lapsed under Phoenix Zoning Ordinance § 903.A because of 180-days non-use. PHZ unsuccessfully appealed that finding to the zoning adjustment hearing officer, the board of adjustment, and ultimately the superior court. Meanwhile, PHZ stopped paying rent, and the Trust declined PHZ's request to defer rental payments pending the nonconforming-use determination.

¶7          In July 2018, the Trust sued PHZ, alleging PHZ breached the lease by not paying property expenses and monthly rent. The Trust sought damages for PHZ's non-payment and declaratory relief terminating the lease and PHZ's possessory rights in the property. PHZ counterclaimed for promissory estoppel, breach of the covenant of good faith and fair dealing, and breach of the covenant of quiet enjoyment. After the superior court dismissed the promissory estoppel counterclaim, PHZ amended its answer and replaced the promissory estoppel counterclaim with a breach of contract counterclaim, arguing the Trust breached the lease by failing to provide a property "which could lawfully be used as an adult oriented entertainment facility." PHZ's amended answer also raised several affirmative defenses, including estoppel, frustration of purpose, lack of consideration, and impossibility.

¶8          The Trust moved for summary judgment on PHZ's counterclaims, which the superior court granted. PHZ timely appealed. Though the superior court also granted summary judgment in favor of the Trust on its claims for declaratory relief and breach of contract, PHZ appeals only the dismissal of its breach of contract counterclaim. This court has jurisdiction under article VI, section 9, of the Arizona Constitution, and A.R.S. §§ 12-120.21.A.1 and 12-2101.A.1.

**ANALYSIS**

¶9          PHZ argues the superior court erred in granting the Trust's motion for summary judgment on its breach of contract counterclaim because (1) the lease "necessarily implies that the Pink Rhino club could legally be operated by PHZ when it took possession" and (2) certain parol evidence supports that implied term.

**¶10**		This court reviews *de novo* the grant of a motion for summary judgment. *Tierra Ranchos Homeowners Ass'n v. Kitchukov*, 216 Ariz. 195, 199, ¶ 15 (App. 2007). The superior court may grant summary judgment when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Orme Sch. v. Reeves*, 166 Ariz. 305, 309 (1990); Ariz. R. Civ. P. 56(a).

## I.		Implied Term

**¶11**		This court reviews the interpretation of contracts *de novo*. *Grosvenor Holdings, L.C. v. Figueroa*, 222 Ariz. 588, 593, ¶ 9 (App. 2009). "The purpose of contract interpretation is to determine the parties' intent and enforce that intent." *Id.* To determine intent, this court considers "the plain meaning of the words in the context of the contract as a whole." *See Dunn v. FastMed Urgent Care PC*, 245 Ariz. 35, 38, ¶ 10 (App. 2018). If the terms of a contract are "clear and unambiguous, a court must give effect to the contract as written." *Grubbs & Ellis Mgmt. Servs., Inc. v. 407417 B.C., L.L.C.*, 213 Ariz. 83, 86, ¶ 12 (App. 2006).

**¶12**		Two lease provisions are at issue here—paragraphs 12 and 13. They provide in relevant part:

> 12. *Use.* Lessee shall use the Premises solely as an adult oriented entertainment facility, providing for dancing and musical entertainment, including the service of alcoholic beverages permitted under Lessee's liquor license(s) issued by the State of Arizona, and food service. Lessee shall occupy the Premises promptly following the Effective Date and, except as set forth below, Lessee shall at all times during the Lease Term diligently operate its business on the Premises.
>
> . . . .
>
> 13. *Compliance with Laws, Restrictions, Covenants, and Encumbrances.*
>
> A. Lessee's use and occupation of the Premises, and the condition thereof, shall, at Lessee's sole cost and expense, comply fully with (i) all applicable statutes, regulations, rules, ordinances, codes, licenses, permits, orders and approvals of any governmental agencies, departments, commissions, bureaus, boards or instrumentalities of the United States, the state in which the Premises are located and all political subdivisions thereof . . . .

¶13     Both provisions identify obligations assigned exclusively to PHZ as the lessee. Paragraph 12 requires PHZ to use the property "solely as an adult oriented entertainment facility," and requires PHZ to occupy the property and operate its business diligently. Paragraph 13 assigns PHZ "all" responsibility for legal compliance—including permitting and zoning. These paragraphs do not impose any express obligations on the Trust.

¶14     Despite the lease's express terms, PHZ argues paragraphs 12 and 13 necessarily imply the Trust was obligated to provide a club capable of operating as an adult-entertainment facility on the day the lease was signed. We disagree.

¶15     "[T]erms which are plainly or necessarily implied in the language of a contract are as much a part of it as those which are expressed." *Demand v. Foley*, 11 Ariz. App. 267, 272 (1970). But implied-in-fact covenants are generally disfavored, and this court has recognized them only in limited circumstances. *See Walgreen Ariz. Drug Co. v. Plaza Ctr. Corp.*, 132 Ariz. 512, 515 (App. 1982) (listing factors to consider when reviewing for an implied-in-fact covenant); *Smith v. Phlegar*, 73 Ariz. 11, 18 (1951) ("courts will declare implied covenants to exist only when there is a satisfactory basis in the express contract of the parties which makes it necessary to imply certain duties and obligations in order to effect the purposes of the parties to the contract made") (citation omitted).

¶16     Adopting PHZ's interpretation would countermand the lease by introducing an implied term at odds with the lease's express provisions. To begin, the lease does not require an implied term because its provisions are in harmony when viewed as a whole. *See Nichols v. State Farm Fire & Cas. Co.*, 175 Ariz. 354, 356 (App. 1993) (a contract "must be read as a whole in order to give a reasonable and harmonious meaning and effect to all of its provisions") (citation omitted). Paragraph 12 restricts the property's use to adult entertainment and requires prompt occupation, which reasonably follows from the potential lapse in a nonconforming use. Paragraph 13 assigns PHZ all responsibility for legal compliance. At the lease's outset, the property was not incapable of ever being used for adult entertainment. Instead, the nonconforming-use issue was yet to be determined by a zoning authority, and PHZ agreed to assume an obligation to pursue it—and did.

¶17     The remaining lease provisions on which PHZ relies do not support the exceptional remedy PHZ requests. Paragraph 24 says the Trust relied on PHZ's "business experience and creditworthiness" and the adult-entertainment purpose for which PHZ intended to use the property. Those terms comport with paragraph 12's exclusive-use provision. Similarly,

paragraph 3.B.i makes renewal contingent upon continuous occupation. But the *occupation* of a property is not tantamount to the *operation* of a business. Those paragraphs each repeat the exclusive-use and occupation provisions of paragraph 12, respectively. The terms do not impose a warranty on the Trust to ensure operability at the lease's inception.

**¶18**        The sole term discussing operability is paragraph 12's requirement PHZ operate its business diligently. But diligent business operation, standing alone, does not presuppose business operation must be viable on the day of signing. Instead, a harmonious reading of that term in the context of the entire lease would require PHZ to operate its business diligently, to the extent such operation is legally compliant. *See Aztar Corp. v. U.S. Fire Ins. Co.*, 223 Ariz. 463, 477, ¶ 48 (App. 2010) ("It is the duty of the court to adopt a construction of a contract which will harmonize all of its parts, and apparently conflicting parts must be reconciled, if possible, by any reasonable interpretation." (quoting *U.S. Insulation, Inc. v. Hilro Constr. Co.*, 146 Ariz. 250, 259 (App. 1985))). Indeed, a harmonious reading of business diligence may well include PHZ's obligation to pursue legal compliance, which PHZ agreed to do at its own expense in paragraph 13.

**¶19**        As a final matter, PHZ argues paragraph 13 does not control because it involves general terms. *See ELM Ret. Ctr., LP v. Callaway*, 226 Ariz. 287, 291, ¶ 18 (App. 2010) ("because specific contract provisions express the parties' intent more precisely than general provisions, specific provisions qualify the meaning of general provisions"). We disagree. If anything, paragraph 13 specifically addresses the issue of legal compliance, unequivocally assigning "all" compliance responsibility to PHZ. *See id.* at ¶ 20. Though it is written broadly, paragraph 13 squarely addresses the core issue at stake in this appeal—which party bore the burden of legal compliance. By assigning compliance responsibility to PHZ, paragraph 13 forecloses PHZ's resort to an implied term. *See Smith*, 73 Ariz. at 18 (implied covenants "can arise only where there is no expression on the subject"). In short, we must "give effect to the contract as written." *See Grubbs*, 213 Ariz. at 86, ¶ 12.

## II.        Parol Evidence

**¶20**        PHZ also argues the parties' contemporaneous actions and beliefs, established by affidavits, support the Trust's implied obligation to provide an operable club at the lease's outset.

**¶21**        In determining whether to consider parol evidence in interpreting a contract, Arizona follows the "Corbin view of contract

interpretation." *Taylor v. State Farm Mut. Auto. Ins. Co.*, 175 Ariz. 148, 153 (1993) (citing *Burkons v. Ticor Title Ins. Co. of Cal.*, 168 Ariz. 345, 350–51 (1991)). Under that view, a court must first "consider[] the offered evidence and, if [the court] finds that the contract language is 'reasonably susceptible' to the interpretation asserted by its proponent, the evidence is admissible to determine the meaning intended by the parties." *Id.* at 154 (citations omitted). Though the parol-evidence rule permits consideration of extrinsic evidence when a contract is reasonably susceptible to more than one meaning, it prohibits such proof if it varies or contradicts express contractual terms. *Id.* at 152; *see also Roe v. Austin*, 246 Ariz. 21, 26, ¶ 17 (App. 2018); *ELM Ret. Ctr.*, 226 Ariz. at 291, ¶ 15.

¶22 PHZ identifies only two sources of extrinsic evidence on appeal: (1) the declaration from the trustee (Elizabeth Brazee), and (2) the affidavit from PHZ's principal (Patrick Zanzucchi).

¶23 First, though consistent with the lease, the trustee's declaration does not aid PHZ's interpretation. PHZ relies on several of the trustee's avowals about (1) an earlier lease with a different group requiring that group use the property for adult-entertainment purposes, (2) the importance to the trustee of PHZ resuming and continuing those purposes, and (3) the value the trustee placed on the experience of PHZ's members. None of those statements contextualize—let alone overcome—paragraph 13 of the lease, which requires PHZ to bear all responsibility for legal compliance. Indeed, the lease expressly says the exclusive use of the property was "as an adult-oriented entertainment facility" and PHZ had to ensure legal compliance at its "sole cost and expense."

¶24 Second, Mr. Zanzucchi's affidavit directly contravenes the lease's express terms. His affidavit stated, "PHZ's sole purpose for entering into the Lease was to operate [the Pink Rhino]" and he "clearly understood [the Trust] intended to provide PHZ with a legally operable strip club." But, as discussed above, his assumption of an implied promise of operability is inconsistent with paragraph 13, which allocates all responsibility for legal compliance to PHZ. *See supra* ¶¶ 15–19. PHZ cannot use Mr. Zanzucchi's purported antecedent understanding to contradict the parties' express written agreement. *See Taylor*, 175 Ariz. at 152.

¶25 Third, PHZ's subsequent conduct—including its independent request for a nonconforming-use determination and its pursuit of a zoning appeal—also confirmed the lease's plain language imposing all responsibility for legal compliance on PHZ. PHZ does not present admissible parol evidence sufficient to create a genuine issue of material

fact or alter our interpretation of the lease's express terms. *See Orme Sch.*, 166 Ariz. at 309.

## ATTORNEY FEES

**¶26** The Trust requests its reasonable attorney fees and costs under paragraph 43 of the lease and A.R.S. § 12-341.01. PHZ does not contest an attorney-fee award. Paragraph 43 of the lease provides "the prevailing party [in any judicial proceeding] shall be entitled to recover all of its reasonable attorneys' fees and costs." Accordingly, as the successful party on appeal, we award the Trust its reasonable attorney fees and costs upon compliance with ARCAP 21. *See* A.R.S. §§ 12-341, -341.01.A.

## CONCLUSION

**¶27** We affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AA